## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **KEVIN JOSEPH GUITTERREZ** | **18-11351** |
| | **SECTION "A"** |
| DEBTOR | CHAPTER 13 |

### REASONS FOR DECISION

On November 13, 2018, hearing on the Motion to Dismiss Chapter 13 Case with Prejudice ("Motion")[1] filed by Milissa Mayeux Guitterrez ("Mayeux"), creditor and exwife of Kevin Joseph Guitterrez ("Debtor"), came before the Court. At the conclusion of the hearing, the Court took the matter under advisement.

**I. Facts**

On September 16, 2014, the 22nd Judicial District Court for the Parish of St.Tammany ("State Court") entered a Judgment of Divorce that terminated the marriage between Debtor and Mayeux[2] ("Domestic Proceeding"). In conjunction with the Domestic Proceeding, the State Court entered a Consent Judgment Regarding Child Support ("Consent Judgment"). The Consent Judgment ordered Debtor to pay Mayeux, for the benefit of their two minor children:

> [T[he sum of Two Thousand Dollars ($2,000.00) per month, effective August 1, 2014, with no retroactivity, due and payable in equal installments per month on the first and fifteenth of the month . . . [and] Out of pocket medical and dental expenses for the minor children shall be paid equally by the parties.[3]

---

[1] P-59.
[2] The proceedings are entitled "Milissa Mayeux Guitterrez v. Kevin Joseph Guitterrez," docket number 2014-11480.
[3] P-59, Exh. A at 1.

Roughly three months after the State Court entered the Consent Judgment, Debtor filed a number of motions seeking to change the agreed upon custody arrangement and reduce his required child support payment to Mayeux. Mayeux also filed a number of motions: (1) an Expedited Motion for Contempt; (2) a Supplemental Motion for Contempt for Violation of the Permanent Injunction; and (3) an Expedited Motion to Compel Discovery. On November 15, 2016, the above described motions came before the State Court. The parties compromised their requests for relief and the State Court entered a Stipulated Judgment.[4]

The Stipulated Judgment ordered Debtor to pay Mayeux:

> [T]he sum of $100,000.00 for attorney fees, costs, and expert fees in connection with [Debtor's] violation of the temporary restraining order and preliminary and permanent injunction as outlined in [Mayeux's] Motions, payable as follows:
> 1. [Debtor] shall pay at least $25,000.00 on or before January 1, 2017.
> 2. [Debtor] shall pay at least $25,000.00 on or before January 1, 2018.
> 3. [Debtor] shall pay the remaining $50,000.00, in minimum monthly installments of $1,000.00 per month due of the 1st of the month, beginning April 1, 2017 and continuing every month thereafter until paid in full.
> 4. All payments identified above shall be made payable to Stone Pigman Walther Wittmann, LLC and must be delivered to the offices of Stone Pigman Walther Wittmann, LLC on or before the due date.[5]

Following the entry of the Stipulated Judgment, Mayeux was forced to file a Motion to Modify and Increase Child Support and a Motion to Determine Amount of Past Due Support, to Make Past Due Payments Executory, for Attorney's Fees and Costs, and to hold [Debtor] in Contempt of Court ("Motion to Modify Support").

---

[4] P-59, Exh. B.
[5] *Id.* at 2.

On March 14, 2017, the State Court entered a second stipulated judgment[6] ("Second Stipulated Judgment") requiring Debtor to maintain health, dental, and vision insurance for the children.[7] It also awarded additional attorney's fees of $75,000.00, payable in installments of at least $1,000.00 per month beginning on April 1, 2017, maturing no later than December 31, 2022.[8] The Second Stipulated Judgment also declared the amounts ordered were nondischargeable under 11 U.S.C. §§ 523(a)(5) and (a)(15).[9]

On May 29, 2018, Debtor filed a voluntary petition for relief under Chapter 13 of Title 11.[10] Debtor has proposed a plan of reorganization which pays the prepetition amounts accruing on his domestic support obligations, including the entire debt to Stone Pigman, in monthly installments extending over 60 months. Debtor also proposes to pay the ongoing monthly domestic support obligations owed directly to Mayeux that accrue postpetition, mortgage payments on an investment property, as well as mortgage payments on the home he occupies and car payments on his vehicle.[11] In total, Debtor will be paying over $2000 to Mayeux in child support, as well as approximately $2200 a month in domestic support obligation arrearages.

Mayeux does not dispute Debtor's ability to pay prepetition arrearages owed to her over the life of the plan.[12] She also admits that Debtor is current with the monthly support payments owed to her accruing postpetition.[13] Mayeux's complaint centers on Debtor's extension of the time to pay Stone Pigman.[14] She has filed the instant Motion requesting dismissal of this case because Debtor's

---

[6] *Id.*, Exh. C.
[7] *Id.* at 2.
[8] *Id.* at 6.
[9] *Id.*
[10] P-1.
[11] P-29, Debtor's First Amended Chapter 13 Plan.
[12] *See* P-59.
[13] Hearing Transcript from December 11, 2018.
[14] P-59 at 7–9.

3

proposed plan fails to satisfy the amounts owed to Stone Pigman under the Stipulated Judgments within the time period allowed, December 31, 2022.[15] In addition, Mayeux argues that the case should be dismissed because Debtor's proposed plan is unfeasible.

Debtor asserts that the amounts accrued under the Stipulated Judgments can be paid over the life of his plan as prepetition debt. Debtor also argues that dismissal of his case would not be in the best interests of creditors.[16]

**II. Law and Analysis**

Section 1307(c)(11) of the Bankruptcy Code provides that a debtor's case may be dismissed or converted if the debtor fails "[T]o pay any domestic support obligation that first becomes payable after the date of the filing of the petition."[17] By negative inference, any domestic support obligation that first becomes payable prior to the filing of the case may be satisfied through periodic payments under a plan.

Domestic support obligations are defined by section 101(14A)[18] of the Bankruptcy Code:

> The term "[D]omestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title that is –
> (A) owed to or recoverable by–
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the

---

[15] *Id.* at 9–10.
[16] P-66.
[17] 11 U.S.C. § 1325(a)(8).

>
> order for relief in a case under this title, by reason of applicable provisions of–
>> (i) a separation agreement, divorce decree, or property settlement agreement;
>> (ii) an order of a court of record; or
>> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

This includes the State Court's award to Stone Pigman as it represents fees incurred by Mayeux in the Domestic Proceeding and for which she is personally liable. The majority of case law holds that attorneys' fees awarded an ex-spouse for legal representation during a divorce or custody proceeding constitute a domestic support obligation.[19] Accordingly, the issue this opinion evaluates is whether the claim for fees "first became payable" after the Debtor filed his Petition.

According to Mayeux's proof of claim, only $2,000.00 in outstanding child support payments were owed on the Petition date.[20] The Stipulated Judgments had balances of $38,248.03 and $64,326.17 respectively.[21] Both judgments were current under their payment terms. In addition, Debtor has continued to make child support payments directly to Mayeux since filing.[22]

Debtor is treating the obligation to satisfy Stone Pigman's fees as an accrued prepetition

---

[19] See *Matter of Hudson*, 107 F.3d 355, 357 (5th Cir. 1997) (citing *In re Dvorak*, 980 F.2d 940, 941 (5th Cir. 1993) ("A court ordered obligation to pay attorney's fees charge by an attorney that represents a child's parent in child support litigation against the debtor is nondischargeable as a debt to a former spouse for maintenance or support of such child."). *See also In re Sprong*, 661 F.2d 6 (2nd Cir. 1981) (Attorney's fees of wife that debtor agreed to pay pursuant to stipulation incorporated into a divorce decree are properly characterized as alimony and support.); *In re Edinger*, 518 B.R. 859, 865 (Bankr. E.D.N.C. 2014) (holding that fees awarded to any attorney representing the best interest of the child in divorce litigation are in the nature of support and thus a "domestic support obligation").
[20] POC 8-2.
[21] The balances due as of the Petition date were $2248.03 and $3326.17 respectively constituting accrued but not yet due interest. POC 8-2.
[22] P-66 at 1.

debt.[23] Debtor's plan seeks to pay the outstanding amounts over sixty months or until April 19, 2023. Mayeux argues that the obligations are postpetition and because the plan fails to pay them as they come due, it cannot be confirmed and the case must be dismissed.[24]

The requirements for plan confirmation are contained in 11 U.S.C. § 1325. Section 1325(a)(8) requires a debtor satisfy "domestic support obligations...that first become payable after the date of the filing of the petition." Interpretation of the phrase, " domestic support obligation that *first become payable* after the filing of the petition" controls the outcome of this case. The provision was added to the Bankruptcy Code in 2005[25] with little comment. Since its enactment, only a few cases have turned on its meaning. In fact, this appears to be a matter of first impression in the Fifth Circuit.

Colliers provides no discussion of the issue while Judge Lundin's leading Chapter 13 treatise suggests that "'[b]ecomes payable' perhaps means something different form 'accrues.'"[26] Conversely, Blacks Law Dictionary defines "payable" as "(of a sum of money or a negotiable instrument) that is to be paid. An amount may be payable without being due. Debts are commonly payable long before they fall due."[27]

Section 101(5)(2017) defines a 'claim' as "[A] right to payments, whether or not such right is ...matured .." Claims are to be considered in the broadest sense and clearly encompass debts that are owed but not yet due.[28] For example, a promissory note represents a claim owed prepetition

---

[23] P-29.
[24] P-59 at 8–9.
[25] Cases decided prior to 2005 generally concern when a claim accrued and whether or not it was a support obligation. Because they did not have to address § 1307(c)(11) phrase "first payable" they are not binding and provide little instruction. *See e.g. In re Ellis,* 72 F.3d 628, 632–33 (8th Cir. 1995).
[26] Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th ed., § 529.1, at ¶16, Sec. Rev. Mar. 29, 2006, www.Ch13online.com.
[27] Black's Law Dictionary (10th ed. 2014).
[28] H.R.Rep No. 595, 95th Cong., 2d Sess. 309 (1977); S.Rep No. 989, 95th Cong., 2d Sess. 21–22 (1978).

even if the installments to satisfy its balance do not occur until after the filing of the bankruptcy petition.[29] Similarly, a debt that arises from conduct performed prepetition but which is not yet due is a prepetition claim.[30] The Supreme Court in *Pennsylvania Dep't Pub. Welfare v. Davenport* emphasized that the central focus when determining when a claim arises is when the "right to payment" occurs.[31]

"Payment" may be something other than the maturity or due date. Whether a party holds a right to payment is determined by state law. On one hand, "Because awards of penalties and attorney fees are not automatic, but rather rest with the discretion of the factfinder, they become due, if at all, only on the date of their award."[32] "[A] claim will be held to have arisen prepetition, even when the actual right to payment matures postpetition, when the parties could have fairly contemplated a claim prior to bankruptcy."[33] When payment is due has little effect on when a claim arises or accrues. Instead, the determinative factor is when the obligation arose.

Section 1325(a)(8) presents a different wrinkle in this analysis. By adding the phrase, "first becomes payable," one might argue, as Judge Lundin hints, that a postpetition domestic support obligation is not defined by when it *accrues*, but when it is *payable*.[34] At first blush this would seem to be a logical interpretation, however, does the inclusion of the temporal term, first, affect the

---

[29] *See In re APF Co.*, 270 B.R. 567, 572 (Bankr. D. Del. 2001) ("If the buyer files bankruptcy before expiration of the note's term, the remaining installment payments become a prepetition claim even if the installment payments come due postpetition.") *citing Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1036 (5th Cir. 1987) ("The character of a claim is not transformed from prepetition to postpetition simply because it is contingent, unliquidated or unmatured when the debtor's petition is filed.").
[30] *In re Ellis*, 72 F.3d at 633.
[31] 495 U.S. 552, 559 (1990); *see also Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 524 (5th Cir. 2004) ("The touchstone of any "claim" is that there is an "enforceable obligation" of the debtor or an enforceable "right to payment" from the debtor.").
[32] *Hendrick v. Patterson*, 13-47688 (La. App. 2 Cir. 1/16/13), 109 So.3d 475, 485.
[33] *LeJeune v. LeJeune (In re LeJeune)*, 283 B.R. 398, 401 (Bankr. E.D. La. 2002).
[34] *See* Lundin, *supra* note 26.

argument?

For example, there is little question that if an alimony or child support payment is ordered, the ex-spouse's right to payment does not accrue until the arrival of each month after the award. Payments missed prepetition constitute accrued support arrearages and are subject to satisfaction through a debtor's plan.[35] Payments owed postpetition are postpetition obligations and subject to section 1325(a)(8)'s requirements[36] for plan confirmation. The distinction turns on when the obligation is *first payable*.[37] Although a support payment may be ordered prepetition, payments cannot be demanded until they each accrue. Although the obligation may exist into the future, the debt does not arise until the passing of each month because it is unknown if a future installment will ever accrue (*i.e.* a spouse dies or remarries, a child attains the age or status of majority; or the support amount is changed due to a change in circumstances). Thus, the obligation exists prepetition, but it is not *first payable* until each successive month arrives.

On the other hand, a support debt that is both an obligation and has accrued becomes immediately payable when it arises.[38] If repayment over time is permitted, the debt is still presently payable even if not due.[39] As Blacks Law Dictionary explains, "An amount may be payable without being due." The debt becomes *first payable* when accrued even if payment is delayed by agreement or order. In this sense it is a present claim against the debtor. Ultimately the issue focuses on the

---

[35] *In re Young*, 497 B.R. 922, 931 (Bankr. W.D. Ark. 2013).
[36] Section 1325(a)(8) of the Bankruptcy Code list requirements for plan confirmation including that the debtor must pay "all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation."
[37] 11 U.S.C. § 1307(c)(11).
[38] *See In re Hutchens*, 480 B.R. at 389.
[39] *In re Ellis*, 72 F.3d at 633. The Court, in *In re Ellis* held that a debtor's obligation was a pre-petition debt that arose at the time of the dissolution decree and not the dates that the installment payments were due. Specifically stating that "installment payments did not become post-petition debt merely because the dates of payment had not yet arrived."

"distinction between present monetary awards and awards of benefits coming due in the future."[40]

At least one decision has recognized this analysis. In *In re Peterson*, an award requiring the payment of an ex-spouse's attorneys' fees was entered prepetition. However, the order provided for payment in installments extending beyond the petition date. The Court found that the obligation "became a legally enforceable debt owed by the debtor to Ms. Sutton on the date... entered. They [we]re, therefore, pre-petition claims . . ." [41] In contrast, where a state court judgment awarded future pension benefits the court held it was a postpetition debt because the judgment did not award the debtor's ex-spouse "a present dollar amount representative of her interest, but instead, awarded her a share in payment that were not yet due or payable but which were to become due and payable . . . when [the debtor] became eligible for retirement benefits."[42]

The language of both judgments makes clear that Debtor owes a present quantifiable debt to Stone Pigman.[43] Although the Stipulated Judgments allow for Mayeux's attorneys to be paid over time, the amount owed is a present monetary award. Payments over time do not make the Stipulated Judgments uncertain. Furthermore, the debt is secured by Debtor's immovable property and immediately payable should Debtor "desire to transfer any immovable property."[44] Thus, it is clear that the Mayeux's claims for attorneys' fees are payable prepetition, even if they are not due until the agreed upon payment dates. Unlike the judgment at issue in *In re Grossman* that allotted a portion of the debtor's pension benefits that the debtor was not yet receiving, here the obligation to

---

[40] *In re Grossman*, 259 B.R. 708, 711 (Bankr. D.N.D. 2001).
[41] *In re Peterson*, 2012 Bankr. LEXIS 5540, at *17 (Bankr. E.D.N.C. 2012).
[42] *In re Grossman*, 259 B.R. at 709.
[43] Mayeux also concedes in her proof of claim that the Court may determine that these payments became payable prepetition, rather than postpetition and provides an alternative for the treatment of the claim if the Court determines that is the case.
[44] P-58, Exh. B at 2.

pay attorneys' fees was awarded prepetition for work performed pre-petition.

There is a second ground to Mayeux's Motion which does not depend on the nature of the terms under which the Stone Pigman debt is satisfied. Mayeux argues that the plan is not proposed in good faith because it is unfeasible and Debtor cannot propose a feasible plan. Mayeux bears the burden of establishing that no confirmable plan can be proposed.[45]

Debtor's plan proposes to pay 12 installments of $500.00 followed by 48 installments of $2436.00.[46] He also proposes to make child support payments of $2000.00 per month, mortgage payments on investment property and his place of residence in the amounts of $1,850.00 and $1841.86 respectively and a car note in the amount of $523.04.[47] The domestic support arrearages included in Debtor's plan total approximately $104,000 and are principally comprised of the amounts owed to Stone Pigman.[48] These are payable monthly as well. Finally a relatively small debt to the Internal Revenue Service must also be paid.[49] By extending the term for repayment to Stone Pigman from December 31, 2022 to May 29, 2023 (a period of only five months), Debtor attempts to make all payments required under the Stipulated Judgments.

Mayeux argues that Debtor lacks sufficient income to make the proposed payments. Debtor disagrees. Debtor's plan is ambitious and it remains to be seen if it can be accomplished. However, prepetition he managed to make payments to his ex-spouse and Stone Pigman and was current as

---

[45] *See Gremillion v. HealthEdge Inv. Fund, L.P. (In re Gremillion)*, 547 B.R. 196, 198 (Bankr. E.D. La. 2016)("The movant bears the burden of proving that 'the filing was frivolous because there was no reasonable probability that the debtor would emerge from the bankruptcy proceeding because there is no realistic chance of reorganizing.'"); *Carolin Corp. v. Miller*, 886 F.2d 693, 694 (4th Cir. 1989).
[46] P-29 at 2.
[47] P-29.
[48] *Id.* at 3.
[49] *Id.* at 6.

of the Petition date,[50] no secured arrearages exist and the plan appears confirmable on its face. Debtor is entitled to present it for confirmation and if confirmed, carry out its provisions.

Finally, the provisions of section 1307 are not mandatory. "[T]he court *may convert* a case or ...*may dismiss* a case, whichever is in the best interests of creditors and the estate..."[51] The dismissal of this case is not in the best interests of creditors or the estate. If Debtor has to divert additional money to defend foreclosures, additional motions to collect in the Domestic Proceedings, or negotiate with the IRS, there will be less for creditors. If Mayeux seeks incarceration of Debtor in order to collect, no one is likely to be paid. Bankruptcy is designed to provide an orderly structure for the collection of debt, reducing legal fees and providing a temporary respite from collection efforts. This generally results in distribution to a wider range of claimants even if delayed.

### III. Conclusion

For the Reasons set forth above, the Motion to Dismiss is DENIED and an Order in accord with these Reasons will be separately entered.

New Orleans, Louisiana, December 20, 2018.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[50] Debtor owed Mayeux a child support payment for the month of filing but otherwise was current on the payments under the Stipulated Judgments. *See* POC 8-2.
[51] 11 U.S.C. § 1307; *Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647, 654–55 (5th Cir. 2010) (citing *Barbieri v. RAJ Acquisition Corp. (In re Barbieri)*, 199 F.3d 616, 619–20 (2d Cir. 1999)).